UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Marilee S. Rowe,                                                                    Case No. 04-4492 (JNE/FLN)

          Plaintiff,

vs.                                                                                              **REPORT AND RECOMMENDATION**

Jo Anne B. Barnhart,
Commissioner of
Social Security,

          Defendant.

_____

Fay E. Fishman, Esq., for Plaintiff.
Lonnie F. Bryan, Esq., for the Government.

_____

## I. INTRODUCTION

**THIS MATTER** is before the undersigned United States Magistrate Judge on Plaintiff Marilee Rowe's counsel's petition for an award of attorney's fees and legal costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), in the amount of $7,485.11 for attorney's fees.  Ms. Rowe contends that she and her counsel are entitled to an award of attorney's fees under EAJA because Ms. Rowe is the prevailing party in this case and because the Commissioner's position was not substantially justified.  The Government does not dispute the fact that Ms. Rowe is the prevailing party, rather, the Government opposes the motion on the grounds that the Commissioner's position on this matter was substantially justified.

## II. PROCEDURAL HISTORY

Ms. Rowe applied for Disability Insurance Benefits ("DIB") on March 17, 2000, alleging she became disabled on August 16, 1998, due to a car accident in which she injured her back and right

shoulder. The Social Security Administration denied her application for DIB both initially and upon reconsideration. Pursuant to Ms. Rowe's request, an administrative hearing was held before Administrative Law Judge ("ALJ") Michael D. Quayle on August 22, 2001. On March 26, 2002, the ALJ issued a decision awarding her benefits for a period beginning April 1, 2000, and ending November 30, 2001. Ms. Rowe appealed the unfavorable portion of the ALJ's decision and the Appeals Council denied her request for review of the ALJ's decision on May 10, 2003, making the ALJ's decision the Commissioner's final decision in this matter.

On October 14, 2004, Ms. Rowe filed a Complaint with the District Court of Minnesota seeking judicial review of the final decision of the Commissioner partially denying her application for DIB. On February 1, 2006, the undersigned issued a Report and Recommendation, granting summary judgment to Ms. Rowe and awarding benefits for the periods of August 16, 1998 through March 31, 2000, and December 1, 2001 through the present. *See* Report and Recommendation ("R&R") [Docket entry #9]. Ms. Rowe was awarded benefits because the undersigned determined that the ALJ failed to give proper weight to Ms. Rowe's treating physician's opinion regarding her RFC, improperly discredited Ms. Rowe's subjective complaints of disability, erred in dismissing Ms. Rowe's statements of depression without any evaluation and failed to propound a proper hypothetical to the VE. *See* R&R at 19-20. District Court Judge Ericksen rejected the Commissioner's objections and adopted the Report and Recommendation in an Order dated March 2, 2006 [#22]. Ms. Rowe now requests an award of attorney's fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412.

## III. DISCUSSION OF LAW

**A.     Legal Standard for Fees under the EAJA**

28 U.S.C. § 2412(d)(1)(A) of EAJA provides in relevant part:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The EAJA also sets forth requirements for requesting an award of costs and fees:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from an attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified.

28 U.S.C. § 2412(d)(1)(B). Furthermore, "[w]hether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." *Id.* The Supreme Court has held that a judgment granting remand is a final judgment for which fees may be granted. *See Shalala v. Schaefer*, 509 U.S. 292, 301-02 (1993).

"Party" under the EAJA means an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed. *See,* 28 U.S.C. §2412(d)(2)(B). The Commissioner does not dispute that Ms. Rowe was a "prevailing party" within the meaning of

the statute. Therefore, the determination of whether Ms. Rowe is entitled to a fee award under the EAJA depends upon whether or not the Commissioner's position was substantially justified. *See Lauer v. Barnhart*, 321 F.3d 762, 764 (8th Cir. 2003).

The Commissioner bears the burden of proving her litigation position was "substantially justified." *Id.; Welter v. Sullivan*, 941 F.2d 674, 676 (8th Cir. 1991). To establish substantial justification, the Commissioner must show that the denial of benefits had a reasonable basis in law and fact. *See Welter*, 941 F.2d at 676 (*citing Pierce v. Underwood*, 487 U.S. 552, 565-566 (1988)). The test of whether the Commissioner's position was substantially justified requires a showing that the position was "clearly reasonable, well- founded in law and fact, solid though not necessarily correct." *Friends of Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885 (8th Cir. 1995). This means that the Commissioner's position need only be "justified to a degree that could satisfy a reasonable person" to defeat a claimant's application for attorneys' fees. *Pierce,* 487 U.S. at 565. This inquiry involves an evaluation of the Commissioner's position both at the pre-litigation and litigation phases of the case. *See Iowa Express Distribution, Inc. v. NLRB,* 739 F.2d 1305, 1309 (8th Cir. 1984).

Fees are not to be awarded simply because the Commissioner loses the case. *See Welter*, 941 F.2d at 676. The Commissioner's position in denying benefits can be substantially justified even if the denial is unsupported by substantial evidence on the record as a whole. *See id.; Jackson v. Bowen*, 807 F.2d 127, 128 (8th Cir. 1986). The rationale underlying this rule is that the substantial evidence and substantial justification standards are different. *See Welter*, 941 F.2d at 676. As the Eighth Circuit explained:

> Under the substantial evidence standard, the district court must consider evidence that both supports and detracts from the Secretary's position. In

>contrast, under the substantial justification standard the district court only considers whether there is a reasonable basis in law and fact for the position taken by the Secretary.

*Id*. (internal citations omitted).

Because the standards are neither semantic nor legal equivalents, the Commissioner can lose on the merits of the disability question and win on the application for attorney's fees. *See id.*

**B.     Analysis**

Ms. Rowe argues that the position of the Commissioner was not substantially justified because the ALJ's analysis of the opinion of her long time treating physician, Dr. Jacoby "fell short of the considerations mandated by law and regulations." Specifically, Ms. Rowe argues that the undersigned found that there was no indication that the ALJ gave any consideration to the long term perspective and character of Dr. Jacoby's treatment of her, noted that no other physician had a more detailed and expansive knowledge and understanding of her medical problems, the ALJ failed to explain his conclusion that there was not objective support for Dr. Jacoby's opinion, the ALJ provided misleading analysis in disregarding Dr. Jacoby's opinion and found that there was nothing in the objective findings to warrant the ALJ's rejection of Dr. Jacoby's opinion. Finally, Ms. Rowe argues, that the undersigned found, contrary to the opinion of the ALJ, that she did indeed seek out aggressive treatment for her medical impairments.

These findings, Ms. Rowe argues, establish that the Commissioner's final decision failed to follow well-established considerations set forth in the Social Security Act and therefore, the government's position was not substantially justified. We agree. The ALJ made a series of errors which compel the conclusion that the ALJ's analysis was clearly inadequate, and therefore, that the position of the Commissioner did not have a reasonable basis in law or fact.

When weighing a medical opinion, the ALJ should consider: 1) the examining relationship; 2) the treatment relationship; 3) whether medical findings support the opinion; 4) whether the opinion is consistent with the record as a whole; and 5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(1)-(5); *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003). It is not, however, the law in the Eighth Circuit that the ALJ must consider each factor in deciding how much weight to accord a medical opinion, but rather the ALJ "should 'give good reasons' for discounting a treating physician's opinion." *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2003) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000), *reh'g* and *reh'g en banc denied*, April 26, 2000); *cf. Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (holding that ALJ was not required to methodically discuss each *Polaski* consideration, so long as he acknowledged and examined those considerations).

In this case, the undersigned concluded that the ALJ failed to properly explain why he did not give weight to the RFC evaluation of Dr. Jacoby. The ALJ rejected Dr. Jacoby's August, 2001 opinion because:

> ...such a restrictive functional capacity is not supported by the objective findings on examination. While this claimant has shown some decreased range of cervical spine and shoulder motion, she has generally maintained normal sensation, strength and use of her upper extremities. Her lumbar spine complaints were not fully supported by physical or neurologic examination. Dr. Jacoby even released the claimant to work as a form of therapy at one point.

(Tr. 25.)

The Court found that the ALJ's analysis of Dr. Jacoby's opinion fell well short of the required considerations and noted that there was no indication that the ALJ gave *any* consideration to the long term perspective and the character of Dr. Jacoby's treatment relationship with Ms. Rowe despite the fact that Dr. Jacoby had regularly examined and treated Ms. Rowe for four years. The

Court also found that the record indicated that no other medical source had a more detailed and expansive knowledge and understanding of Ms. Rowe's complaints of neck, shoulder and back pain than Dr. Jacoby.

The Court found that the ALJ's conclusion that Dr. Jacoby's opinion was inconsistent with objective findings was flawed and contradictory. The ALJ did not provide any authority or explanation for concluding that normal neurological findings contradicted Dr. Jacoby's opinion; the ALJ minimized Dr. Jacoby's consistent observations that Ms. Rowe had limitations in her range of motion; the ALJ failed to explain how other objective findings were not consistent with Dr. Jacoby's opinion; the ALJ was misleading at best in his treatment of Dr. Jacoby's release of Ms. Rowe for work ; the ALJ provided for no explanation for his statement that there was evidence that Ms. Rowe may have limited her activities and that she had been unwilling to fully participate in treatment recommendations and this statement clearly conflicted with the record.[1]

The Commissioner's position on the issue of the ALJ's rejection of the opinion of Ms. Rowe's long time treating physician was not substantially justified because a reasonable person would not find that the Commissioner's position had a reasonable basis in law or fact.  The ALJ clearly failed to properly evaluate Dr. Jacoby's opinions as the treating physician. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001), which normally should not be disregarded, *Ghant v. Bowen*, 930 F.2d 633, 639 (8th Cir. 1991), and may only be discounted when his statements are conclusory or unsupported by medically acceptable clinical or diagnostic data. *Rogers v. Chater*,

---

[1] The Court found that the record showed that Ms. Rowe sought aggressive treatment whenever it was recommended, as reflected by the fact that she underwent four separate surgeries since the motor vehicle accident in 1996. The Court further found that there was nothing in the record to indicate that Dr. Jacoby, or any other medical source, recommended or offered an aggressive course of treatment for her complaints of neck, back and shoulder pain.

118 F.3d 600, 602 (8th Cir. 1997). Because the position of the Commissioner on their summary judgment motion was contrary to authority, the Commissioner's position was not substantially justified. *See Friends of Boundary Waters Wilderness v. Thomas,* 53 F.3d 881, 885 (8th Cir. 1995) (government's position was not substantially justified when it was clearly contrary to established law).

C.  **Calculation of Attorney's Fees**

Attorney's fees requested under this section may not exceed the rate of $125.00 per hour unless the court determines that an increase in the cost of living or "special factor" adjustments justifies a higher fee. *See* 28 U.S.C. § 2412(d)(2)(A) (1996). The parties do not contest that the cost of living has increased as measured by the U.S. Department of Labor Bureau of Statistics. The parties also agree that cost of living adjustments to the $125.00 hourly fee allowed results, for the years in which counsel worked on Ms. Rowe's case, in an adjusted hourly fee of $151.65 for year 2004, $156.79 for year 2005 and $159.20 for year 2006.

Ms. Rowe and her counsel seek an award of $7485.11. The Government raises a number of objections to this amount. It objects to the inclusion of numerous billing entries for 24 minutes each for reviewing short, standard documents such as a notice of Action of the Appeals Council, Order on Application to Proceed without Payment of Fees, Proof of Service by U.S. Marshall, Notice of Appearance, Defendant's Motion for Extension of Time, Order granting Motion for Extension of Time, Consent to Proceed before Magistrate Judge, Order and Judgment. The court agrees that these billing entries are not justified given the routine and very brief nature of these documents. Because

these entries total 3.6 hours, the court has deducted $573.12[2] from total fee award sought by Ms. Rowe. The Court cannot be persuaded that it would take longer than a minute or two to review each of such documents or that any of these documents required analysis for a client as Ms. Rowe's counsel argues in her Reply Memorandum.

The Government also objects to the total number of hours (47.8) that Ms. Rowe's counsel billed for her time drafting memoranda of law, appearing at administrative hearings and drafting this fee petition. The Government cites several decisions in which courts have found that the number of hours constituting a benchmark for fee awards in these cases is 20 - 40 hours. *See* Govt's Response at 13-15. Ms. Rowe's counsel submits at least a half a dozen counter authorities suggesting that 45-65 hours is a reasonable expenditure of attorney time in these cases. *See* Plaintiff's Reply Memorandum at 6. Given the numerous issues involved in Ms. Rowe's case – the Government admits that the transcript of the hearing was "relatively large" at 508 pages – and the series of errors made by the ALJ, the Court finds that the number of hours Ms. Rowe's counsel expended on this case is not unreasonable.

### IV. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petition from Plaintiff's counsel for attorneys fees and costs pursuant to 28 U.S.C. § 2412 should be **GRANTED**; and

---

[2]This number is taken from the Government's brief which appears to have calculated the hourly rate for these entries at each of the applicable yearly billing rates and then totalled the amount. *See* Government's Response to Plaintiff's Petition at 16.

    2.       Therefore, the Government should be ordered to pay Ms. Rowe $6911.99[3] in attorney's fees and costs.


DATED: August 24, 2006                              s/ *Franklin L. Noel*
                                                                      FRANKLIN L. NOEL
                                                                      UNITED STATES MAGISTRATE JUDGE


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **September 14, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.

---

[3] In her Reply Memorandum, Ms. Rowe agrees with the Government's argument regarding the different hourly rates, adjusted for the increase in the cost of living, that apply for years 2004, 2005 and 2006 and states that this results in an adjusted total fee award of $6911.99. To this amount, she adds the fees incurred in drafting the Reply Memorandum and states that the new total is $7485.11.